**Maureen STOREY, Plaintiff,**

v.

**BOARD OF REGENTS OF the UNIVERSITY OF WISCONSIN SYSTEM and Milton L. Sunde, Defendants.**

No. 84–C–250–D.

United States District Court, W.D. Wisconsin.

Jan. 22, 1985.

Michael R. Fox, Madison, Wis., for plaintiff.

Diane Nicks, Asst. Atty. Gen., State of Wis., Dept. of Justice, Madison, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

Plaintiff alleges that as a result of deliberate sex discrimination she was denied state employment by defendants. The complaint purports to state three causes of action, under the following statutory authorities: Title IX of the Education Act Amendments of 1972, 20 U.S.C. § 1001 *et seq.* (Title IX); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Title VII); and 42 U.S.C. § 1983. Defendants have moved to dismiss the Title IX and § 1983 claims. I construe defendants' motion as one arising under rule 12(b)(6) of the Federal Rules of Civil Procedure.

## OPINION

The purely legal question presented by defendants' motion is whether Title VII is the exclusive avenue of relief available to plaintiff. In arguing Title VII is an exclusive remedy, defendants invoke the principle that where two or more alternative statutory mechanisms exist to redress a wrong, a detailed, comprehensive scheme preempts more general remedies. *Brown v. GSA*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). In *Brown* the plaintiff asserted a claim under 42 U.S.C. § 1981 as well as under Title VII, but the Court held that Title VII was the exclusive remedy for claims of discrimination in federal employment. Language in the legislative history of Title VII showed Congress perceived that federal employees had no effective remedies prior to enactment of Title VII. From this the Court inferred congressional intent to make Title VII the exclusive remedy available to federal employees: "It would require the suspension of disbelief to ascribe to Congress the design to allow its careful and thorough remedial scheme to be circumvented by artful pleading." *Id.* at 833, 96 S.Ct. at 1968. The Court concluded the detailed scheme of Title VII preempted the potential remedy under the broadly worded § 1981.

Defendants contend that applying the principle of implied exclusivity articulated in *Brown* and other cases compels the conclusion that in this action involving state employment, plaintiff is limited to Title VII. For support, defendants cite a recent case involving state employment, *Torres v. Wis. Dept. of Health and Social Services*, 592 F.Supp. 922 (E.D.Wis.1984). There the court held that the plaintiff's constitutional

claims, raised under § 1983, were so intertwined with those arising under Title VII that Title VII was the exclusive remedy. Applying the *Brown* rationale, the court inferred congressional intent to limit the availability of § 1983 in situations where Title VII offers an effective remedy.

I am sympathetic to defendants' contention that as a matter of policy it is undesirable to permit plaintiffs to circumvent the procedural and remedial limits of the Title VII scheme by pleading alternative causes of action, such as § 1983, when the same facts underlie both claims. I subscribe to the principle that a court should infer that in general Congress intends the detailed and comprehensive to preempt the general.

 Nonetheless, I conclude Title VII is not plaintiff's exclusive remedy in this case. There is an important proviso to the rule of implied exclusivity, namely, that it is applicable only in the absence of legislative history evincing a contrary intent. It is clearly Congress' prerogative to provide overlapping and duplicative remedial statutory schemes if it chooses; courts may make a reasoned inference about Congress' intent only when Congress has not articulated its position on the exclusivity of the remedies it has created. The cases defendants rely on are distinguishable in that the legislative history of the statutes involved in those cases were silent or inconclusive as to exclusivity. *Smith v. Robinson, et al.,* —— U.S. ——, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) (Education of the Handicapped Act preempts § 1983); *Middlesex Cty. Sewerage Authority v. Sea Clammers,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) (environmental protection statutes preempt § 1983); *Brown v. GSA,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (Title VII is exclusive remedy for federal employees); *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (statutory habeas corpus scheme preempts § 1983).

*Brown* is not controlling because it involved a claim of discrimination in federal employment; this case involves state employment, a critical distinction. In the legislative history of the relevant amendments to Title VII, Congress was silent regarding the exclusivity of remedies for federal employees, permitting the Court to infer Congress intended to preempt all non-Title VII remedies. With regard to state employment, however, the legislative history shows an explicit intent to leave untouched pre-existing avenues of relief available to state and local employees:

> In establishing the applicability of Title VII to State and local employees, the Committee wishes to emphasize that the individual's right to file a civil action in his own behalf, pursuant to the Civil Rights Act of 1870 and 1871, 42 U.S.C. §§ 1981 and 1983, is in no way affected.... Title VII was envisioned as an independent statutory authority meant to provide an aggrieved individual with an additional remedy to redress employment discrimination.... Inclusion of state and local employees among those enjoying the protection of Title VII provides an alternate administrative remedy to the existing prohibition against discrimination perpetuated 'under color of state law' as embodied in the Civil Rights Act of 1871, 42 U.S.C. § 1983.

H.R.Rep. No. 238, 92nd Cong., 2nd Sess., *reprinted in* 1972 U.S.Code Cong. & Ad. News 2137, 2154. That the majority clearly intended Title VII to be a nonexclusive remedy for state and local employees is corroborated by statements made by dissenters from the legislation:

> 3. Failure to Make Title VII an Exclusive Federal Remedy. Despite the enactment of title VII of the Civil Rights Act, charges of discriminatory employment conditions may still be brought under prior existing federal statutes such as the National Labor Relations Act and the Civil Rights Act of 1866. In view of the comprehensive prohibitions against discrimination contained in title VII, and the intent of the Committee bill to consolidate procedures and remedies under one agency, it would be consistent to make title VII the exclusive remedy.... However, our attempt to amend the Commit-

tee bill to make title VII an exclusive remedy ... was rejected.

*Id.* at 2175.

*Brown* itself makes clear that explicit legislative intent is controlling. In holding Title VII the exclusive remedy for federal employment discrimination, the Court distinguished a prior ruling that a private employee is not limited to Title VII. *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). In *Johnson* the Court had held that Congress intended not to deprive private employees of alternative remedies previously available to them. " 'The legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.' " *Id.* at 459, 95 S.Ct. at 1719, *quoting Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 48, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). Because there is an equally clear expression of congressional intent with regard to the legislation at issue here, as it affects state employment, this case is governed by *Johnson* rather than *Brown.*

Further, I think it not significant that the proof offered to support both a Title VII claim and a non-Title VII claim may be identical. Unlike the district court in *Torres v. Wis. Dept. of Health and Social Services,* 592 F.Supp. 922 (E.D.Wis.1984), I reject the view that when the claim asserted can be brought under Title VII as well as under another label, Title VII is the exclusive remedy. Congress recognized Title VII provided remedies coextensive with other forms of relief, such as those available under 42 U.S.C. § 1981. H.R.Rep. No. 238, *supra,* at 2154. Also, I find no indication in case law that the exclusivity of Title VII turns on whether the claim could be brought solely under Title VII. Hence I conclude that plaintiff is not limited to Title VII in her quest for relief from alleged discrimination in state employment.

Deciding that Title VII is not plaintiff's exclusive remedy does not end the inquiry,

for I must still determine whether plaintiff can properly raise her particular non-Title VII claims. Although Congress intended to retain alternative remedies for discrimination in the context of state employment, it appears Congress intended to retain only those statutory remedies already in existence when Title VII was enacted. The drafters stated that "[t]he bill, therefore, by extending jurisdiction to State and local government employees does not affect existing rights that such individuals have already been granted by previous legislation." H.R.Rep. No. 238, *supra,* at 2154.

■ Even though § 1983 is a pre-existing remedy, it does not follow that every employment-related claim stated under § 1983 is permissible in an employment discrimination suit. Section 1983 provides a remedy for deprivation of rights secured by the "laws" of the United States. If the right sued upon under § 1983 is itself a right secured by Title VII, which contains its own detailed remedial provisions, a suit under § 1983 to vindicate that particular right may well be barred. In *Great American Fed. S. & L. Assn v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), the Court held that a plaintiff could not seek to redress a violation of Title VII by means of 42 U.S.C. § 1985. There the plaintiff complained he was fired in retaliation for his criticism of discriminatory treatment of female employees by his employer. Title VII forbids such retaliation, and plaintiff's claim was based on a violation of that act. The Court reasoned that allowing a plaintiff to invoke § 1985 to redress a violation of Title VII would permit the circumvention of the rigid, detailed scheme of Title VII.[1] The Court inferred Congress did not intend to create new rights under Title VII, yet permit claimants to bypass the Title VII mechanism in seeking to redress of violations of those rights.

Defendants' reliance on *Novotny* is misplaced. The right I understand plaintiff to allege in this case, the right to be con-

---

1. The Sixth Circuit recently extended the rationale of *Novotny* to bar § 1983 claims based on violations of Title VII. *Day v. Wayne County Board of Auditors,* 749 F.2d 1199 (6th Cir.1984).

sidered for employment without regard to her sex, was not created by Title VII. The Constitution itself addresses the matter by its guarantee of equal protection. *See, e.g., Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). Since Title VII is not the sole source of the right plaintiff seeks to vindicate, the rationale of *Novotny* is inapplicable. *See Day v. Wayne County Board of Auditors,* 749 F.2d 1199 (6th Cir.1984).

More troublesome is plaintiff's cause of action under Title IX, which was enacted after the amendments of Title VII at issue here. In support of her Title IX claim, plaintiff alleges the same facts as those alleged under her Title VII cause of action. She requests the same relief as that sought under Title VII—instatement in the position she was denied, with back pay—but also a remedy unique to her Title IX cause of action: the cutoff of federal funds to the Board of Regents. Were plaintiff to invoke Title IX simply to provide an additional avenue to redress the alleged wrong she personally suffered, Title VII would preempt Title IX.[2] Under the principles discussed above, in enacting Title VII, Congress presumably intended to leave intact only pre-existing alternative remedies, not to permit future overlapping avenues of relief unless it explicitly announced, in the course of providing the subsequent remedy, that it was to be in addition to Title VII. No such announcement accompanied enactment of Title IX.[3] However, plaintiff seeks also a remedy unique to her Title IX cause of action, namely, the cutoff of all federal funds to the Board of Regents. Assuming plaintiff is a proper party to seek such relief, the unavailability of such a remedy

under Title VII would incline me to conclude that Title VII does not preempt a Title IX claim seeking this unique remedy. If the Title IX remedy differed only in the extent or type of recovery to which plaintiff was entitled on account of the particular instance of discrimination she personally suffered—e.g., if Title IX provided compensatory and punitive damages—I would think otherwise. It appears, though, that in seeking a cutoff of funds plaintiff purports to act in the manner of a private attorney general, an opportunity not available under Title VII. I think Congress would not have created such a qualitatively different remedial mechanism under Title IX, assuming that it did, only to have Title VII preempt it when the asserted discrimination arises in the context of employment.

The crucial question is whether, on the basis of the allegations stated in the complaint, plaintiff is entitled to seek such a remedy under Title IX. I am reluctant to resolve this issue without having the parties address it explicitly. In particular, the parties should discuss whether Title IX permits an individual claiming an isolated instance of discrimination to effect a cutoff of federal funds to an institution and, further, whether success on such a claim could permit plaintiff to obtain a cutoff of all funds systemwide.

### ORDER

Defendants' motion to dismiss is denied with respect to plaintiff's claim under 42 U.S.C. § 1983. Until I have received supplemental briefing from the parties, I reserve ruling on defendants' motion to dismiss plaintiff's claim under Title IX.

---

**2.** This conclusion is premised on my assumption that the substantive standards established by Title VII and Title IX are highly similar, if not identical. Title VII makes it unlawful for an employer "to fail or refuse to hire ... any individual, or otherwise to discriminate against any individual ... because of such individual's ... sex ...." 42 U.S.C. § 2000e–2(a)(1). Title IX provides that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be⁻ subjected to discrimination under any education program or

activity receiving Federal financial assistance ...." 20 U.S.C. § 1681(a).

**3.** A number of years passed after Title IX was enacted before that act was recognized as implicitly creating a private right of action. *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). It has been even more recently that the Supreme Court has held that Title IX applied in the employment context. *North Haven Board of Education v. Bell,* 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982).